# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Ideas to Go, Inc., a Minnesota corporation, | Case No. 0:12-cv-01975-MJD-TNL |
| Plaintiff, | **DEFENDANT SPIGIT, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SET ASIDE DEFAULT** |
| v. | |
| Spigit, Inc., a Delaware corporation, | |
| Defendant. | |

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND .................................................................................. 1

I.    THE PARTIES' CLAIMS AND DEFENSES.................................................. 1

II.   THE PARTIES' COMMUNICATIONS AND ENTRY OF DEFAULT ........... 3

ARGUMENT .......................................................................................................... 5

III.  LEGAL STANDARD..................................................................................... 5

IV.   THIS CASE SHOULD BE ADJUDICATED ON THE MERITS ................... 6

      A.    The Default Should Be Set Aside Because Defendant Has Acted In
            Good Faith. .......................................................................................... 6

      B.    Spigit Has Multiple Meritorious Defenses. ......................................... 8

            1.    Plaintiff Cannot State A Claim For Violation Of 15 U.S.C.
                  § 1114............................................................................................ 8

            2.    Spigit Has Strong Defenses On The Merits To Plaintiff's
                  Remaining Claims........................................................................ 9

            3.    There Is No Prejudice To Ideas to Go. ..................................... 11

CONCLUSION..................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*,
  843 F.2d 808 (4th Cir. 1988) ................................................................. 8

*Davis v. Walt Disney Co.*,
  430 F.3d 901 (8th Cir. 2005) ................................................................ 10

*Hoover v. Valley W. D M*,
  823 F.2d 227 (8th Cir. 1987) ................................................................. 6

*In re Jones Truck Lines, Inc.*,
  63 F.3d 685 (8th Cir. 1995) ................................................................... 6

*Johnson v. Dayton Elec. Mfg. Co.*,
  140 F.3d 781 (8th Cir. 1998) ........................................................ *passim*

*Massi v. Holden*,
  No. 09-1821, 2010 WL 1544272 (D. Minn. Apr. 16, 2010) ........................ 5, 6, 7, 12

*Metcalf v. E.I. du Pont de Nemours & Co.*,
  No. 05-1035, 2006 WL 1877069 (D. Minn. July 6, 2006) ................................... *passim*

*Oberstar v. F.D.I.C.*,
  987 F.2d 494 (8th Cir. 1993) ................................................................. 6

*PHC, Inc. v. Pioneer Healthcare, Inc.*,
  75 F.3d 75 (1st Cir. 1996) .................................................................... 9

*Puppe v. Ametek, Inc.*,
  No. 10-3888, 2012 WL 3870556 (D. Minn. Sept. 6, 2012) ........................ 12

*SquirtCo v. Seven-Up Co.*,
  628 F.2d 1086 (8th Cir. 1980) .............................................................. 10

STATUTES

15 U.S.C. § 1114 ................................................................... 2, 8, 9

RULES

Federal Rule of Civil Procedure 12(b)(6) ........................................... 12

Federal Rule of Civil Procedure 55(c) .............................................. 5, 6

Federal Rule of Civil Procedure 60(b) .............................................. 5, 6

## INTRODUCTION

Defendant Spigit, Inc. respectful requests that this Court to set aside the entry of default against it (Dkt. No. 4) so that the case may proceed on the merits.  While Spigit did not respond to the Complaint within twenty-one days of service, this error was entirely inadvertent and will cause no prejudice to Plaintiff.  As a result of the loss or mis-delivery of service papers—and what can at best be described as a miscommunication with Plaintiff's counsel—Spigit did not learn that it had been served until September 17, 2012, after the period to respond had passed and after Plaintiff had, without notice, obtained entry of default.  Spigit has been and remains willing and able to defend this case on the merits.  Spigit is prepared to bring meritorious defenses, starting with those set forth in its concurrently-filed motion to dismiss.  Because allowing this suit to go forward for resolution on the merits will not cause Plaintiff any prejudice, Spigit respectfully requests that the Court set aside the entry of default.

## FACTUAL BACKGROUND

### I.    THE PARTIES' CLAIMS AND DEFENSES

Spigit, Inc. is a California-based social productivity company that provides tools to help organizations leverage innovation.  Turay Decl. ¶ 1.  Spigit offers a software platform called Icon that lets users ask questions and get answers from colleagues, friends or social groups.  Spigit's Icon platform helps users share knowledge and feedback with others, make meetings more engaging, and reduce email traffic.

In its Complaint, Plaintiff alleges infringement of two federally registered

1

trademarks in violation of 15 U.S.C. § 1114 and related federal and state laws: a stylized

design mark incorporating the term "iCoN Innovative Consumer Network," and the word

mark "iCoN Panel." Both marks depict the "icon" portion in an unusual mixed case

format, with a lower case i, upper case C, lower case o, and upper case N. Neither mark

consists of the word "icon" by itself. Plaintiff has filed applications to use these marks

in connection with "business consulting services."

Spigit has numerous well-supported defenses. First, as described in the

concurrently-filed motion to dismiss, Plaintiff cannot state a claim for infringement of a

federally registered trademark under 15 U.S.C. § 1114 because it does not have a

federally registered trademark for the allegedly infringed marks. As for Plaintiff's other

claims, they are predicated on Ideas to Go having used the asserted marks in commerce,

but there are significant questions as to whether it did so before Spigit began using its

"Icon" brand, or if Plaintiff had ever used the marks in commerce before filing the

complaint. Declaration of Jedediah Wakefield ¶ 6, Exh. 4.

Even if Plaintiff will be able to show use of its alleged mark and logo in

commerce, there is no likelihood of confusion. The mark is weak: countless companies

use ICON or ICON-based names and logos for a myriad of goods and services, including

a variety of business consulting services. Not only does this crowded field of similar

marks preclude a finding infringement, so too does the fact that the parties' respective

marks are entirely different in font, color scheme, style, appearance, and overall

impression.

## II.    THE PARTIES' COMMUNICATIONS AND ENTRY OF DEFAULT

For months before this lawsuit commenced, outside counsel for the parties had been in communication regarding the underlying dispute.  Plaintiff's counsel initially wrote to Spigit regarding Spigit's Icon mark on May 25, 2012.  Declaration of Matthew Turay ¶ 2.  Spigit promptly forwarded the correspondence to its outside counsel, Fenwick & West, LLP, which responded by letter on May 30, 2012 detailing Spigit's position that there was no likelihood of confusion.   Wakefield Decl. ¶ 2, Exh. 1.  The parties exchanged further correspondence thereafter, and Fenwick again wrote to Plaintiff's counsel concerning this matter on June 25, 2012. *Id.*, Exh. 2

On August 14, 2012 unbeknownst to Spigit, Ideas to Go filed this lawsuit.  Even though they had been in contact with Fenwick about this matter for months, counsel for Ideas to Go did not notify anyone at Fenwick about the filing of the Complaint, nor did they provide a courtesy copy or ask whether Fenwick would accept service.  Wakefield Decl. ¶ 3.  It was not until a third-party Minnesota law firm emailed Spigit a copy of the complaint that Spigit learned of the suit, and promptly forwarded the information to Fenwick.  Turay Decl. ¶ 5.

After learning of the Complaint and investigating the matter further, Spigit's litigation counsel, Jed Wakefield, telephoned and emailed Plaintiff's counsel, Edward Sheu.  Wakefield Decl. ¶¶ 5-7, Exh. 5.  On August 27, 2012, counsel spoke by phone. *Id.* ¶ 8.  During this call, Mr. Wakefield raised three points. *First*, he informed Mr. Sheu that based on his search of the United States Patent and Trademark Office's records, Ideas to Go did not own a federal trademark registration for the marks mentioned in the

Complaint, or any other marks containing "icon." *Second*, Mr. Wakefield also noted that the applications referenced in the Complaint had been filed on an "intent to use" basis, but that he was unable to find any actual use of the marks on Ideas to Go's website. *Third*, Mr. Wakefield asked whether Spigit had been served. Mr. Sheu replied that he did not know, but would get back to Mr. Wakefield about service, the registration issues, and evidence of use of the marks. At the time, Mr. Sheu did not disclose that on August 16, 2012, he had already filed a certificate of service of the Complaint. *Id.*

On September 13, 2012, Ideas to Go applied for entry of default. (Dkt. No. 3). Mr. Sheu never informed Mr. Wakefield of his intent to apply for entry of default before doing so, nor did he provide him with a copy of the application before submitting it to the Court.[1]   Wakefield Decl. ¶ 10.  Spigit management, in the meantime, did not know that the Complaint had been served, and thus did not notify counsel.[2]

The clerk entered the default on Friday, September 17, 2012. (Dkt. No. 4). The following Monday, Plaintiff's counsel finally "got back" to Mr. Wakefield, advising that the Complaint had been served, and that a default had been entered.   Wakefield Decl. ¶ 10.  Spigit's counsel immediately requested that Ideas to Go stipulate to set the default aside and set a date for Spigit to respond to the Complaint.  Plaintiff's counsel, Mr. Sheu, indicated he was amenable to this proposal, pending his client's approval. *Id.* ¶¶ 10-11,

---

[1] The Eighth Circuit describes such tactics as "underhanded": "[Plaintiff's counsel] was wrong to move for a default judgment and was rather underhanded to make that motion without notice to an attorney with whom he had been in contact for seven months and to whom he had furnished a 'courtesy' copy of the complaint." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998).
[2] Spigit has investigated but thus far has been unable to locate the service copy of the Complaint.  Turay Decl. ¶ 6-7.

Exh. 7.  But the next day, Mr. Sheu sent correspondence stating that Plaintiff would not consent to the stipulation unless Spigit made a "settlement offer" by September 24, 2012. *Id.* ¶ 12, Exh. 8.

## ARGUMENT

### III.   LEGAL STANDARD

This Court may set aside the entry of default "[f]or good cause shown" pursuant to Federal Rule of Civil Procedure 55(c).  Rule 55(c) provides "a less stringent standard than that required to set aside a judgment of default under Rule 60(b), though 'the same factors are typically relevant in deciding whether to set aside entries of default and default judgments.'" *Metcalf v. E.I. du Pont de Nemours & Co.*, No. 05-1035 (MJD/SRN), 2006 WL 1877069 at *3 (D. Minn. July 6, 2006), quoting *Johnson*, 140 F.3d at 783.

In determining whether good cause exists, the Court considers "[1] whether the conduct of the defaulting party was blameworthy or culpable, [2] whether the defaulting party has a meritorious defense, and [3] whether the other party would be prejudiced if the default were excused." *Johnson*, 140 F.3d at 784.  "The Court should 'focus heavily on the blameworthiness of the defaulting party,' and 'distinguish between contumacious or intentional delay or disregard for deadlines and procedural rules, and a 'marginal failure' to meet pleading or other deadlines.'" *Massi v. Holden*, No. 09-1821 (MJD/JJG), 2010 WL 1544272 at *3 (D. Minn. Apr. 16, 2010) quoting *Johnson*, 140 F.3d at 784.

The Eighth Circuit recognizes a strong preference for setting aside defaults:

"There is a 'judicial preference for adjudication on the merits,' and it is likely that a party who promptly attacks an entry of default, rather than waiting for grant of a default judgment, was guilty of an oversight and wishes to defend the case on the merits." *Id.*, quoting *Oberstar v. F.D.I.C.*, 987 F.2d 494, 504 (8th Cir. 1993).

## IV.   THIS CASE SHOULD BE ADJUDICATED ON THE MERITS

Spigit intends and always has intended to defend this case on the merits. While Spigit did not file its response by September 6, this failure was not a result of contumacious or intentional delay or disregard for deadlines. As discussed below and in its motion to dismiss concurrently filed with this Motion, Spigit has meritorious defenses to Plaintiff's claims. In addition, the short two-week delay does not prejudice Ideas to Go under these circumstances.

### A.   The Default Should Be Set Aside Because Defendant Has Acted In Good Faith.

Where a defendant's delay in responding to a Complaint is caused by "poor communication," or even "careless" conduct, it is only a "marginal failure" for which relief from default should be granted. *Johnson*, 140 F.3d 781 at 785. Under both Rule 55(c) and the stricter standard of Rule 60(b) to set aside a default judgment, Courts in the Eight Circuit have repeatedly found delays excusable when caused by mistake or neglect rather than intentional flouting of the rules. *See, e.g., id.* (confusion between two parties as to which will respond); *Metcalf*, 2006 WL 1877069 (same); *Hoover v. Valley W. D M*, 823 F.2d 227, 230 (8th Cir. 1987) (misplacement of papers); *In re Jones Truck Lines, Inc.*, 63 F.3d 685, 688 (8th Cir. 1995) (attorney mistake as to law). Even where—unlike

here—the defendant and its counsel had actual knowledge of service of the complaint, courts have set aside entry of default. *See, e.g., Johnson*, 140 F.3d at 783 (party who believed insurer would hire counsel was "careless" but "not contumacious"); *Massi*, 2010 WL 1544272 at *4 (defendant demonstrated intent to litigate merits by requesting extension, asking for stipulation to vacating the default, and explaining mistake); *Metcalf*, 2006 WL 1877069 at *4 (delay excusable where it was caused by general counsel's "neglect and poor communication" ).

Here, Plaintiff cannot show that Defendant's failure to respond to pleadings reflected an intent to thwart judicial proceedings, nor a reckless disregard for the effects of its conduct. Spigit's failure to answer the Complaint was based upon a mistaken but good faith belief that the Complaint had not been served—in the context of an ongoing dialogue about resolving or narrowing the dispute between the parties. This was compounded when Spigit's employees either did not receive a copy of the served complaint from its agent, or misplaced that copy. Turay Decl. ¶ 7-8. This confusion about whether the Complaint had been served, while regrettable, comes nowhere near the level of "contumacious or intentional delay."

Spigit has consistently made clear its intention to defend this case on the merits. Upon learning of the Complaint from a third party, counsel for Spigit promptly contacted Plaintiff's counsel, pointed out deficiencies in the Complaint, and asked that Plaintiff's counsel advise if the Complaint was served. Plaintiff's counsel represented that he did not know whether the Complaint had been served, when in fact he had already filed a proof of service. Wakefield Decl. ¶ 8. Had Plaintiff's counsel disclosed this fact in this

7

initial call back in August, Spigit would have timely filed its response to the Complaint.

Spigit's actions since becoming aware of the default further demonstrate that Spigit is not blameworthy. Once Spigit learned of the default on September 17, 2012, it acted immediately and requested that Plaintiff stipulate to set aside the default and to set a date for Spigit's response to the Complaint. Wakefield Decl. ¶ 10. Plaintiff's counsel initially indicated he would agree to set aside the default and schedule a response date, but once it became clear that Plaintiff would not agree to the proposed stipulation, Spigit acted diligently in moving to set aside the default that same week. *See Metcalf*, 2006 WL 1877069 (setting aside default where defendant filed 56 days after receiving notice of default).

As Spigit's actions after learning of service and its concurrently-filed motion to dismiss demonstrate, Spigit never intentionally delayed nor flouted the rules or procedures of this Court.

### B. <u>Spigit Has Multiple Meritorious Defenses.</u>

Whether a meritorious defense exists is determined by examining whether the proffered evidence would permit a finding for the defaulting party. *Johnson*, 140 F.3d at 788 quoting *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988). However the defaulting party need not show that its defenses are controlling or undisputed. *Id.*

### 1. <u>Plaintiff Cannot State A Claim For Violation Of 15 U.S.C. § 1114.</u>

To state a claim for relief under 15 U.S.C. § 1114, a claimant must be the owner of a federally registered trademark. *See* 15 U.S.C. § 1114 ("Any person who shall, without

the consent of the *registrant* . . . use in commerce any reproduction . . . of a *registered*

*mark* . . . ." (emphases added); *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 78 (1st

Cir. 1996) ("An infringement claim under section 32 [of the Lanham Act] requires that

the mark be a *federally registered* trademark.") (emphasis added).   However, Plaintiff's

Complaint does not allege (nor could it) that Ideas to Go is the owner of a federally

registered "icon" mark.   Instead, the Complaint and its exhibits clearly demonstrate that

Plaintiff has only ***applied*** for trademarks containing "iCoN," though none have issued.

As Attachment A to Plaintiff's Complaint plainly shows, the stylized design mark is not

federally registered, and neither is Plaintiff's claimed "iCoN Panel" mark.   Similarly, the

Complaint alleges only that "Ideas to Go owns several federal trademark registration

applications."   Complaint at ¶ 12.[3]   No federal registrations exist for the marks alleged in

the Complaint.   Without this necessary predicate, Plaintiff cannot bring a claim under 15

U.S.C. § 1114 for trademark infringement.   Defendant has briefed this meritorious

defense more fully in its concurrently-filed motion to dismiss.

       2.    <u>Spigit Has Strong Defenses On The Merits To Plaintiff's Remaining</u>
           <u>Claims.</u>

     Plaintiff's remaining allegations are all predicated on Plaintiff's having actually

used the intended "iCoN Innovative Consumer Network" stylized design mark and

"iCoN Panel" word marks, and on Plaintiff having priority over Spigit's use of its single

word "Icon" brand.   While the Complaint alleges that Ideas to Go has been "using and

promoting" its marks since January 2012, there are significant questions as to this claim,

---

[3] A search of the United States Patent and Trademark Office's Trademark Electronic Search System confirms that Ideas to Go does not own any federally registered "icon" mark and that it only has pending applications for the two marks cited in the Complaint.

highlighted by the fact that, as of August 27, 2012, nearly two weeks after the filing of its

Complaint alleging such use, there was no mention of the word "icon" or use of the

stylized design mark on Plaintiff's website.  Wakefield Decl. ¶ 6, Exh. 4.[4]  Discovery will

be necessary to assess when Plaintiff actually began using the marks in question.

Additionally, even if Plaintiff can show use in commerce, there is no potential for

consumer confusion.  In the Eighth Circuit, this court considers six factors:  1) the

strength of the plaintiff's mark; 2) the similarity between the plaintiff's mark and the

alleged infringing mark; 3) the degree to which the allegedly infringing product competes

with the plaintiff's goods; 4) the alleged infringer's intent to confuse the public; 5) the

degree of care reasonably expected of potential customers; and 6) evidence of actual

confusion.  *Davis v. Walt Disney Co.*, 430 F.3d 901, 903 (8th Cir. 2005), *citing SquirtCo*

*v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980).  Here, among other things,

Plaintiff's intended marks are weak, will operate in a crowded market, and are markedly

dissimilar to Spigit's logo.

First, many companies use "icon" or "icon"-based names and marks for a variety

of goods and services, including in the area of consulting—Ideas to Go's field of

business.  *See* Complaint at ¶ 11 (describing the Ideas to Go business as "innovation

process consulting").  In fact there are 328 active US registrations for marks comprised of

or incorporating "icon."  Wakefield Decl. ¶ 14, Exh. 10.  More narrowly, the term "icon"

is often used in connection with business consulting services, including www.icon-

---

[4] After Plaintiff's counsel called on September 17, a review of Plaintiff's website revealed that
Plaintiff had added references to the "iCoN Panel" to its website.  Wakefield Decl. ¶ 13, Exh. 9.
Plaintiff apparently added these materials to its website at some point after the Complaint was
filed and after Spigit pointed out the absence of such materials back in August.

consulting.com/; iconconsultinginc.com/; www.iconsconsulting.com/; www.iconconsult.net/default.htm.  Wakefield Decl. ¶ 15, Exh. 11.  Plaintiff is clearly aware of this crowded market—it did not seek trademark registration of "iCoN" alone, but only as a stylized design and only together with other words.  *See* Exhibit A to the Complaint (Dkt. No. 1).

Moreover, the "iCoN Innovative Consumer Network" intended stylized design mark and the Spigit logo are dissimilar in color scheme, style, appearance, and overall impression.  Plaintiff's intended design mark is dominated by a multi-color graphic element with block lettering, unrelated to anything Spigit uses or might use in the future.  In contrast, Spigit's design is in gray-scale and uses a rounded, cursive script.  Ideas to Go's logo also incorporates circular designs, reminiscent of lower case "i"s or an abstract circular design whereas Spigit's logo consists of a single individual flanked by two other individuals in the background.

Additionally, the "iCoN Innovative Consumer Network" intended stylized design mark is clearly an acronym for the descriptive phrase "innovative consumer network." Not only is this a distinguishing feature between the two designs, but it also confirms that Plaintiff has no rights in "icon" as a standalone mark.

### 3.   There Is No Prejudice To Ideas to Go.

Ideas to Go cannot show that it will suffer any prejudice, much less significant prejudice, if this Court sets aside the default.  It is well established that "prejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits." *Johnson*, 140 F.3d at 785.  Instead, Ideas to Go must

demonstrate "concrete" prejudice "such as loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Id.* (quotations omitted). It cannot.

Spigit's response was due on September 6, 2012. Only two weeks have passed since the deadline, and one week since the entry of default. This is not a long enough period of time to generate prejudice. *See id.* at 785 (no prejudice where defendant filed 39 days after deadline); *Puppe v. Ametek, Inc.*, No. 10-3888 (MJD/JJK), 2012 WL 3870556 (D. Minn. Sept. 6, 2012) (8 months after removal); *Metcalf*, 2006 WL 1877069 (11 months late); *Massi*, 2010 WL 1544272 (29 days late). Spigit is submitting its response to the Complaint in the form of a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Moreover, Ideas to Go has not demonstrated urgency in this matter. It knew of Spigit's use of the Icon mark at least as early as May, and did not file the Complaint until August, more than a month after receiving Spigit's last letter regarding the dispute. Wakefield Decl. ¶ 2-4.

In stark contrast, Spigit would suffer prejudice if the default is not set aside. *Puppe*, 2012 WL 3870556, at *4 (prejudice of default to defendant is "obvious"). In addition—although it will ultimately be unable to prove any—Plaintiff has demanded considerable damages, including punitive damages and attorneys' fees, which would greatly harm Spigit. *Metcalf*, 2006 WL 1877069 at *6 ("[A] large amount of damages weighs in favor of hearing the case on the merits.").

Because Plaintiff cannot demonstrate significant prejudice if the default is set

aside and because of the obvious prejudice Spigit would suffer if the default is allowed to stand, good cause exists for this Court to set aside the entry of default.

## **CONCLUSION**

Spigit respectfully requests that the Court set aside the entry of default for good cause shown in favor of adjudication on the merits of Spigit's concurrently-filed motion to dismiss.

Dated: September 21, 2012

By *S/ James R. Steffen*
James R. Steffen (204717)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-8508
james.steffen@FaegreBD.com

Attorneys for Defendant
SPIGIT, INC.